THE CITY OF CHICAGO

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*

DAVID L. DEGOLYER *et al.*

1. CORPORATIONS—*of corporate liabilities.* Where a corporation made a contract with a party to perform certain work upon its streets, wherein it was expressly stipulated on the part of the contractor, that he would look for payment only from the proceeds of a certain special assessment already levied, and from the proceeds of any special assessments which might thereafter be levied, he agreeing to make no claim against the corporation, except from the collection of such assessments: *Held,* in a proceeding for a *mandamus* against the corporation to compel payment, that such contractor must abide by his agreement to look for payment only to the proceeds of special assessments made or to be made—it appearing that the corporation was, in good faith, and with reasonable diligence, proceeding to make collections by means of such assessments.

2. FORMER DECISION. The case of *Maher* v. *The City of Chicago,* 38 Ill. 266, cited and explained.

APPEAL from the Superior Court of Chicago.

The opinion fully states the case.

Mr. S. A. IRVIN, for the appellant.

Messrs. WILSON & MARTIN, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an application for a *mandamus* against the City of Chicago, to compel payment for work done upon certain streets. It is admitted that the money claimed is due, and the parties entered into a stipulation before the hearing, waiving all objections to the form of proceeding, and agreeing that a peremptory writ of *mandamus* should be issued, if the city could be held liable in any form of action, whether *ex contractu* or *ex delicto*. The court below gave judgment against the city.

It was one of the stipulations in the contract upon which this suit is brought, that the contractor should be paid from the proceeds of a special assessment already levied when the contract was made, and from the proceeds of any special assessments which might thereafter be made; and the contractor expressly agreed to make no claim against the city except from the collection of said assessments.

The contract was made October 12th, 1866. The warrant for the collection of the assessment had been issued October 4, 1866, and at the February term, 1867, of the superior court, application was made for judgment against the delinquent property.

As to $1,041.61 of the assessment on the Washington street property, the city failed to obtain judgment, and a judgment which it did obtain for $667.08, was afterwards reversed in this court. A part of the property assessed, both on Washington and Griswold streets, belonged to the city.

The assessments having been made and confirmed in September, 1866, the city could, under its charter, make no appropriation for its property assessed, until the first three

months of the fiscal year, commencing April, 1867. It did then make an appropriation and levied a tax, and was duly collecting the same, when this proceeding was commenced, in December, 1867.

Besides these causes of non-payment by the city, there was a deficiency of about $2,000 on the amount collected on the Griswold street improvement, arising, as we understand the record, from a deficiency in the amount of the assessment. These facts all appear from the return to the alternative *mandamus*, the case having been heard upon a demurrer to said return.

It further appears from the return, that the city was proceeding to make a new assessment to meet the deficiency in the Washington street assessment, arising from the failure to obtain judgment as to a part of the property, and also to meet the Griswold street deficiency, and if the assessments should not be paid, it would be ready to apply for judgment at the February term, 1868.

On this state of facts, and in view of the express stipulations of the contract, we see no ground for rendering judgment against the city. The counsel for appellee quote the case of *Maher* v. *City of Chicago*, 38 Ill. 266, where there was a similar provision in the contract, and we, nevertheless, gave judgment against the city. But that was upon the ground that a special assessment could not be levied, and we held the city could not be permitted to procure work to be done on the faith of a special assessment, and then avoid payment by setting up that it had no power to levy it. If it could not do what it had undertaken to do, it was bound to compensate the injured party.

If this were a similar case, or if the city were acting in bad faith, such as would be indicated by an unreasonable or unnecessary delay in collecting, by means of a special assessment, we should have no hesitation in holding it liable. But we discover in this record no token of bad faith. ·The greater

part of the assessments on both streets has been collected and paid over.

That there might be a deficiency, was contemplated by the very terms of the contract, for that provides for payment from assessments made and to be thereafter made. So far as the property owned by the city was concerned, it was proceeding with all due diligence to collect the means of payment, in the ordinary mode. The only possible ground for charging negligence, is in the fact that the city failed in its application for judgment to the extent of about $1,700, with assessments amounting to about $40,000. Why the city failed to get this judgment, does not appear, but we certainly can not assume that it arose from any want of good faith, when we see it at once proceeding to make a new assessment, to meet both this deficiency and that on Griswold street, and that it would be ready to make a new application for judgment at the February term.

If the failure to procure this judgment arose from a defect which the city could not cure, or if it was not, in good faith and with reasonable diligence, proceeding to cure it, then the principle laid down in *Maher* v. *The City of Chicago*, would apply. But, as already remarked, the terms of the contract contemplated that additional assessments might be necessary. We see nothing in this case to relieve the contractor from his express stipulation, that he would look for payment only to the proceeds of special assessments made or to be made.

The judgment must be reversed.

*Judgment reversed.*