# AMANDA S. COOK

## v.

# SOUTH PARK COMMISSIONERS.

61   115
31a 458
61   115
170  335

1. EMINENT DOMAIN—*right of, subject to constitutional limitation.* The right of the State to take private property for public uses can not be asserted by mere enactment. The constitution, providing that the citizen shall not be deprived of property except by due process of law, or in conformity to the law of the land, requires a trial or judicial proceeding, and a judgment.

2. Nor does a designation by metes and bounds, followed by a popular vote of approval, a selection by commissioners, and a condemnation, upon due proceedings, deprive the owner of his title or right of possession. Without payment of the damages awarded, the antecedent proceedings are not effective. The last act must be performed before the law will regard the land as taken or acquired.

3. VALUATION—*when ascertained.* In assessing damages, the value at the time of the condemnation should be considered, the owner being entitled to the benefit of an advance caused by the prospective establishment of a public park.

4. TITLE—*tenancy—rent.* The commissioners not having acquired title nor possession, no tenancy existed during the proceedings, to justify an award of rent against the owner in possession.

5. INTEREST—*delay.* No interest accrues upon an award before judgment, nor can a party causing or contributing to delay, have interest, until entry of final judgment.

6. A judgment in a proceeding for the condemnation of private property for public use, awarding damages, will bear interest, although no execution can be issued upon the judgment.

7. VERDICT *upon awards—execution—mandamus.* The verdict upon an award being special, no execution can issue upon it; but the property does not pass until payment. *Mandamus* is necessary to compel the commissioners to act.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Chief Justice, presiding.

This was an appeal in the circuit court of Cook county, by Mrs. Amanda S. Cook, from an award of commissioners

appointed by that court, on the petition of the South Park commissioners, in a proceeding for the condemnation, for park purposes, of certain real estate belonging to her.

The proceedings were had under an act of the general assembly of February 24, 1869.

The first section provided for the organization of the Board of South Park Commissioners, which, by the terms of the act, became a corporate body.

The fourth and second sections provide that "the said commissioners, by this act, are authorized and empowered to, and they shall, within ninety days after their organization as aforesaid, or as soon thereafter as practicable, select the following described lands situated in the towns of South Chicago, Hyde Park and Lake, in Cook county, Illinois, to wit : [describing the lands,] which said lands and premises, when acquired as provided by this act, shall be held, managed," etc.

The fifth section provides that, in case of disagreement, condemnation may proceed under the Right of Way act of June 22, 1852.

The sixth section provides that, " when the title to the land selected for such park, as herein provided, shall have been acquired by said commissioners," etc., they shall acknowledge and record a plat.

Section eighteen provided for a popular election in the three towns named, and that the act should take effect upon a majority vote in the affirmative—not otherwise.

In estimating the value of lands taken, and the amount of damages, the benefits were also to be estimated.

On September 8, 1870, the commissioners appointed to make the assessment filed their report, estimating the compensation to be paid at $90,000. From this award Mrs. Cook appealed to the circuit court, in which she had, January 16, 1871, judgment for $114,347.18, as the total value, including interest.

. Both parties took exception to the rulings and judgment of the court, and respectively appealed to the Supreme Court.

On the trial below, it was stipulated that Mrs. Cook was, at the date of the passage of the law, and had been ever since, the owner of the premises in fee.

The statement of the testimony offered upon the trial, and the rulings of the court upon instructions asked by the parties, are embodied in the opinion of the court.

Messrs. Scammon, McCagg & Fuller, for the appellant.

Messrs. Beckwith, Ayer & Kales, for the appellees.

Mr. Justice Thornton delivered the opinion of the Court:

The law which authorized the commissioners to acquire lands to be held and controlled for a public park, described the lands to be selected.

In determining the compensation to be paid to the owner of the lands taken, the chief question is, at what time shall their value be estimated?

In behalf of the commissioners, it is assumed that the proper time was when the law became operative, by ratification by the voters; that then the property was irrevocably appropriated for public use; the owner was then divested of the beneficial enjoyment of it; deprived of all right to convey or improve it; and that nothing remained to be done but to ascertain and pay the compensation.

The instructions given upon the trial assume that the land was taken when the law went into operation, without any act, on the part of the corporate authorities, to condemn it or to acquire it in any other manner, and that it was devoted to public use by the enactment.

On the part of appellant, it is contended that the legislature can not transfer the property of one man to another; can not donate it to public use by its own mere declaration.

The constitution provides that " no freeman shall be * * * * in any manner deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

Mr. Webster, in his argument in the Dartmouth College case, has given a very correct definition of the phrase, "the law of the land," when he said: "By 'the law of the land,' is most clearly intended the general law, which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not the law of the land."

This section of the constitution had reference only to the taking of the property of one and giving it to another. This is not within the scope of legislative authority, either with or without compensation. The citizen can only be deprived of his property, and the title transferred to another, by a fair trial and an adjudication, according to the course of the common law. There can be no forced divestiture, except by judgment of law, when it is not taken for public use; the legislature can not exercise judicial power, and therefore mere legislation will not accomplish the transfer. *Newland* v. *Marsh*, 19 Ill. 376; *Taylor* v. *Porter*, 4 Hill, 140; *Ross* v. *Prior*, 14 Ill. 171.

The act in question does not undertake to deprive one person of property for the purpose of vesting it in another. It merely empowers the commissioners to select certain described lands, and then recites, "which said lands and premises, *when acquired by said commissioners, as provided by this act,* shall be held, managed and controlled * * * as a public park; for the recreation, health and benefit of the public, and free to all persons forever."

The following section provides that, if the commissioners can not agree with the owners of the real estate "selected as aforesaid," they may proceed to procure its condemnation, in the manner prescribed in the act concerning right of way, approved June 22d, 1852.

These provisions can not properly be construed as an irrevocable appropriation of the land, an absolute divestiture of title, a positive prohibition upon any alienation or improvement, a change of the estate from ownership in fee to a mere tenancy at will. This would be a dangerous and unwarranted exercise of power by the legislature.

The commissioners were authorized to "select." The term implies choice. To choose signifies to take one thing rather than another. When we select we choose. It is true, that other lands than those designated could not be taken, because it would have been in excess of the power, yet the commissioners might have refused to select. The law conferred an authority to be exercised, but not to be exercised at all hazards, and without regard to results.

If the owners had insisted upon a most exorbitant price, and the probabilities were against a fair price by condemnation, the commissioners should be permitted to decline the purchase. The legislature certainly never intended to force the selection without regard to consequences.

The words, too, "when acquired as provided by this act," must have some meaning in determining the legislative intent. To acquire, expresses progressive and permanent action. It would be a solecism to say that a man must acquire an estate, or a title, when the estate or title was complete in him.

The lands were to be held as a public park, when acquired as provided. If no agreement could be made between the commissioners and owners, then the lands were acquired by condemnation.

The several provisions of the law under which the condemnation must be procured, are antagonistic to the position that the land was taken by force of the South Park act.

Upon the filing of the petition, and notice given, commissioners are to be appointed. They must hear the allegations and testimony of the parties interested, and then fix the compensation to be paid to the owners of "lands to be taken" for the purposes specified in the act. They must view and inspect

the premises. It would be a farce to inspect lands taken and appropriated for more than one year prior to their appointment.

Again it is provided that, "the right and title" to the land required shall vest in the corporation, upon the payment of the compensation, and that the judgment shall be so entered, "with the right to enter upon, use, and apply" the land. Scates' Comp. 483, 485.

The language and plain intent of the statute are, that no right to the land shall inure to the corporation until payment of the compensation. It may be unnecessary to decide whether payment must precede any use or possession of the land, but the constitution, without reference to the law, requires, in the taking of property for public use, by the State or a municipality, that there must be some adequate source of compensation, and that the owner of the property shall be secure in the payment. He can not merely be referred to a corporation of doubtful responsibility, and a judgment which may prove to be worthless.

But this question, as to the right of the commissioners to take possession of the land in controversy, was determined in the case of *The People* v. *Williams*, 51 Ill. 63. In that case, where the same laws were under consideration, it was said that the park commissioners can not occupy the land until the damages assessed are paid, and that in no other mode can an owner be deprived of his land through the exercise of the power of eminent domain.

In regard to similar laws, it has always been the doctrine of this court, that the damages must be paid before possession of the land can be taken, or any right to it acquired. *Chi. & Mil. R. R. Co.* v. *Bull*, 20 Ill. 218; *Johnson* v. *Joliet & Chi. R. R. Co.* 23 Ill. 203; *Shute* v. *Chi. & Mil. R. R. Co.* 26 Ill. 436.

The inhibition in the constitution is, "Nor shall any man's property be taken or applied to public use without the consent

of his representatives in the general assembly, nor without just compensation being made to him."

The counsel for appellees insist that the word "taken" is not to be understood in its physical sense, because, under our statute, the land can not be actually entered upon and applied to public use until after the compensation has been ascertained and paid. The reason given is certainly peculiar. It is, that the constitution does not mean an actual taking, for the statute prohibits an actual entry until the payment of the compensation. Even if the statute were in conflict with the constitution, the latter must control as the supreme law. But it is not. The statute provides that the title to the land, and the right to enter upon and use it, must follow the payment of the damages awarded.

The law which created the park commissioners, by virtue of which alone they are constituted a corporate authority, refers to and adopts the law of June 22d, 1852, as the one which must govern the commissioners in acquiring title to the land, and the possession of it.

This latter law requires that persons who may be appointed commissioners to assess damages, shall inspect " the lands to be taken," not the lands already taken.

In the construction of a law, we must consider every part, ponder the effect of every word, to ascertain the intent of the legislature. The law under consideration evidently construed 'the words, "taken or applied to public use," in a physical sense. When it required that compensation must precede any possession, use or application of the land to the purpose in-. tended, what was meant? The taking of the land—the appropriation of it—prior to the performance of the prerequisite of the statute, would be utterly inconsistent with the obvious meaning of the words of the law. If the land can not be entered upon or used before payment of the compensation, it can not, with any propriety of language, or with reference to the common signification of the term, be said to be taken before payment. This would be a distortion of the sense of the

122     COOK *v.* SOUTH PARK COMMISSIONERS. [Sept. T.,

.Opinion of the Court.

word. It can not, literally or metaphorically, have such meaning, in connection with the statute.

We have been referred to authorities in Massachusetts, and some in other States, in which the question as to the time when property shall be deemed to be taken, is discussed. These decisions were made with reference to the peculiar phraseology of statutes which differ somewhat from our own.

The statute of Massachusetts required that railroad corporations should file a certificate of the location of the road, within a limited period.

In the construction given to the statute there is some slight discrepancy.

In some cases it has been decided that the filing of the location should be considered the taking of the land, and conclusive upon the corporation and land owner. *Boston & Prov. R. R. Co.* v. *Midland R. R. Co.* 1 Gray, 340; *Hagen* v. *Boston & Me. R. R. Co.* 2 Gray, 574.

In other cases it was held that, as the company might never file a location, the question, whether the filing was the only act of taking, was a difficult one; and that the filing of a location might be regarded as *prima facie* a taking, in the absence of other proofs. *Davidson* v. *Boston & Me. R. R. Co.*, 3 Cush. 91; *Boynton* v. *Peterboro & Shirley R. R. Co.*, 4 Cush. 467.

These decisions do not aid us very much.

We think that the act for the location and maintenance of the park, and the act to condemn lands for any public work, when considered together, do not bear the construction that the land of appellant was taken by the former act. If such were the necessary construction, the law must be pronounced a violation of the constitution. The legislature has not the power, by mere declaration of law, to set apart the land of the citizen, for the use of corporations, and divest the owner of the right to sell and improve it. It can not, by arbitrary enactment, take property for public use, and limit the owner's right to recover compensation to the date of the law, when

the property might greatly enhance in value between the passage of the law and the time when proceedings to condemn are commenced.

We, therefore, think that the evidence excluded by the court should have been admitted, and that the value of the land should be estimated at the date of condemnation. This would approximate more nearly to right and justice, and to the time when the land is actually taken, as contemplated by the law.

The judgment was entered in proper form, but it is in direct conflict with instructions given by the court. The court instructed the jury that the owner of the land was liable for the rental value for more than one year before the commencement of the proceedings to condemn. The corporation had no right to enter upon or use the premises until the compensation was fixed and paid. There was neither right nor title in the corporation prior to filing the petition. The title was in the owner, as well as the right of occupancy.

Upon what principle of reason or law can the absolute owner of lands, in possession, be made chargeable with rent? The relation of landlord and tenant did not exist by any express agreement; can it be implied? No one will assume that the commissioners had the legal title, and a tenancy will never be implied under one who has not the legal estate.

The appellant did not enter in subordination to the title of any other person, and never acknowledged any obligation to another. She was in possession as the owner in fee, and claiming adversely to all the world, and the proceedings for condemnation were an acknowledgment of her title. The only hypothesis which can be made is, that mere legislation divested her of title, and made her an involuntary tenant of the corporation. The doctrine is monstrous, and can not be sustained.

Complaint is made of the refusal of the court to give certain instructions. The court did not err in refusing to give the eighth, ninth and tenth instructions for appellant.

124          COOK v. SOUTH PARK COMMISSIONERS. [Sept. T.,

Opinion of the Court.

The eighth and ninth are, substantially, that, if lands adjacent to the park generally increased in value, in consequence of the prospect of establishing a public park, then the lands of appellant must share in such increase. This does not fairly or necessarily follow. The adjacent lands would probably, from their peculiar situation, derive a special benefit, and were subject to a special burden. The lands needed 'for the park must be purchased, and the park maintained, by special assessments upon the adjacent lands. Their situation, relatively, was so different that they were not a proper standard by which to judge the value of the lands taken for the park.

The tenth instruction is clearly objectionable. It directed that if one class of lands was unsaleable, and another class saleable, the latter class would form the better criterion to ascertain the true value of the lands in controversy.

It was not proper that the court should assume, as matter of law, that one criterion was better than another. This would have been an usurpation of the functions of the jury. The relative situation of the lands was a subject for the consideration of the jury, and they must determine its weight, and its effect upon the value.

It seems to us that the two first paragraphs of the instruction given by the court upon its own motion, contain all the law which was necessary to aid the jury in determining the value of the lands.

We think there was no error in refusing to allow interest on the amount of the verdict, intermediate its finding and return, and the rendition of the judgment of the court thereon.

Appellant, as well as the commissioners, made a motion to set aside the verdict and for a new trial. The amount might have been paid, if appellant had interposed no delay. In such case, it is not right that the party causing or contributing to the delay should be allowed interest. *Williams* v. *Smith*, 2 Caines, 252; *People* v. *Gaine*, 1 Johns. 343.

At the time the court entered judgment upon the verdict of the jury, appellant insisted that the judgment should be absolute for the payment of the sum found. The judgment was entered in strict conformity to the statute. It could not have been in any different form. The court had no right to award an execution, for execution could not issue upon the judgment. *Chicago & Milwaukee R. R. Co.* v. *Bull*, 20 Ill. 218.

The only mode to coerce the payment of the judgment would be by *mandamus*. By this proceeding the commissioners could be compelled to levy and collect taxes, to be applied in discharge of the damages awarded.

But we are asked to decide whether the judgment will not, by force and operation of law, bear interest from the time of its rendition.

When judgment has been entered upon the verdict, the rights of the parties are fully determined, if no appeal be taken or writ of error prosecuted. The absolute title to the land, and the right to enter upon and use it, only await the payment of the compensation, which has been fixed. The amount to be paid is as fully and formally ascertained as is done by an ordinary judgment. The court had authority to render it, and it only wanted one of the requisites of a common judgment—the award of an execution.

Though no execution could be ordered, the judgment was the conclusion of the law upon the facts found by the jury. The allowance of a claim against an estate is a judgment. Judgments may be rendered against an executor or administrator for the debt of the deceased, and no execution can issue in either case, but they bear interest.

We think that interest should be allowed upon judgments, when final, in proceedings of this character. They are within the spirit, if not the terms, of the statute which allows interest upon all judgments recovered.

Counsel for appellees contend that the court erred in refusing to permit proof of the price paid for other lands within the park lines, and contiguous to the lands in controversy.

No cross error has been assigned upon this refusal; no argument submitted on the part of appellant upon the question presented; and we can not regard the relevancy of this proposed testimony raised by the record. It would be unjust to appellant to decide the question without a hearing from her.

For the reasons given, the judgment is reversed and the cause remanded.

*Judgment reversed.*