Irving H. Flamm and Ann Flamm, Defendants in Error, v. William Hale Thompson, Mayor of the City of Chicago and Members of City Council of Chicago, Plaintiffs in Error.

Gen. No. 33,390.

Opinion filed May 20, 1929. Rehearing denied and opinion slightly modified June 6, 1929.

· SAMUEL A. ETTELSON, Corporation Counsel and GOTTHARD A. DAHLBERG, for plaintiffs in error; JOSEPH J. THOMPSON, Assistant Corporation Counsel, of counsel.

TARNOPOL & FLAMM, for defendants in error.

MR. JUSTICE McSURELY delivered the opinion of the court.

Defendants by this writ of error seek the reversal of an order awarding the writ of mandamus against them. The petitioners alleged that they had a judgment against the City of Chicago for property taken by it in a condemnation proceeding, which judgment had not been paid, and they asked that defendants be ordered to take steps to pay petitioners the amount of their judgment. Defendants filed a demurrer which was overruled and the writ was awarded.

The petition alleged that in 1921 the City Council of Chicago passed an ordinance for the widening of Ashland avenue, which involved the condemnation of 17 feet of private property on each side of the street. The ordinance provided that just compensation should be paid for the property taken and that the cost of the improvement was to be paid by special assessment under the Local Improvement Act. Cahill's St. ch. 24, ¶ 120 *et seq.* The condemnation proceedings were terminated July 26, 1927, when a final judgment was entered fixing the compensation to be paid each property owner and adjudicating that approximately 35 per cent of the cost should be assessed against the private property and the balance, amounting to $7,890,904. against the City as a public benefit. The judgment for the portion of petitioners' property condemned was $50,000. and the assessment for the benefit of the portion not taken was $7,809. It was alleged that, although it was proposed that payment be made by issuing bonds in the usual way,

the bonds when submitted to a referendum vote failed to receive the necessary number of votes; that, although over 90 days have elapsed since the entry of the judgment, yet the City continues to default in the payment of the judgment. The petition further alleges that, if the funds collected out of the first instalment are insufficient to pay the judgment and all other condemnation judgments in this proceeding, it was and is the duty of the City to apply all other funds held in its treasury for any particular purposes whatever but not immediately necessary for such purposes, to the payment of such judgments, and petitioners allege that the City has such other funds in its treasury not immediately required for other purposes, the amount of which is unknown to the petitioners. The petitioners claim that the City is by law authorized to become indebted for municipal purposes to an amount not exceeding 5 per cent of the full value of all taxable property within its limits, as ascertained by the last assessment, and that the City is not now indebted in an amount in excess of its legal limitation and that the issuance of bonds in an amount necessary to pay the condemnation judgments will not increase its indebtedness in excess of such legal limitation. The petitioners represent that, by reason of the delay of the City in taking possession of the condemned premises and paying compensation therefor, the portion of their premises not taken for the improvement has been rendered unsalable and unmerchantable and that they are thereby incurring a loss of rents and income. The petitioners allege that the City is unconditionally liable for the payment of the judgment and that the city council has neglected and refused to levy and collect taxes for the purpose of paying the same.

The writ issued against the defendants commanded them to arrange for the payment of petitioners' judgment and for this purpose first to resort to amounts

collected on assessments levied for said improvement, and if the amount so collected and now on hand be insufficient to pay such judgment, they are commanded during the first quarter of the present fiscal year of said City of Chicago to cause to be included in the annual appropriation bill or any amendment thereto an appropriation for the payment of petitioners' judgment and during the first half of the same fiscal year they shall by ordinance direct the levy and collection of a general tax in the manner provided by law sufficient to raise funds necessary for its corporate purposes, including the payment of petitioners' judgment, and for this purpose either to make the necessary appropriations, issue and approve vouchers and adopt such resolutions and ordinances and perform such other official acts as may be required to carry this order into effect.

Section 32 of the Local Improvement Act, ch. 24, ¶ 155, Cahill's St., provides that upon the return of a verdict in a condemnation proceeding, the petitioner shall within 90 days after final judgment elect whether it will dismiss said proceeding or enter judgment, and "if it shall elect to enter judgment, it shall become thereby bound and liable to pay the amount thereof, whether such assessment be collected or not, and such judgment or condemnation shall not be conditional." It is the contention of the petitioners that after the expiration of 90 days after July 26, 1927 (which would be about October 26, 1927), when the City did not dismiss said proceeding, the judgment was not conditional or contingent upon the collection of assessments, but must be paid forthwith.

Defendants' position is that under the Local Improvement Act the City is liable for the payment of condemnation judgments only out of the assessments levied for the improvement and as these are collected. This position may be tenable as to contractors who vol-

untarily deal with the City subject to the conditions
imposed by the ordinance. But this does not apply to
property owners whose property is taken under con-
demnation proceedings, without their request or con-
sent. This distinction was pointed out in *Mecartney
v. City of Chicago,* 273 Ill. 276, where it was said that
cases cited involving a contractor are not applicable to
a case involving the rights of a property owner who
has a judgment for property taken by condemnation.
Whatever may be the rule with regard to a contractor,
or whatever may have been the decision under prior
statutes, there is little doubt that a property owner
whose property is condemned, holding a judgment
against the City, may compel the City to act by man-
damus where it has failed to exercise due diligence in
collecting funds necessary to pay the judgment. *City
of Chicago v. Thomasson,* 259 Ill. 322; *City of Chicago
v. Roth,* 334 Ill. 132. In both these cases the property
owner had voluntarily delivered possession of the
premises to the City, in which respect the facts are
unlike those in the instant case, where the property
owners still retain possession; but in these cases the
decisions assume that, where possession has not been
voluntarily delivered, compensation could be com-
pelled by mandamus.

In *Beveridge v. West Chicago Park Com'rs,* 100 Ill.
75, the owner of the land sought to recover interest on
the amount of his judgment for compensation for land
taken, which compensation was not paid until more
than nine years after the judgment was entered. It
was there held that plaintiff was entitled to interest
on the ground that the defendants did not have the
power to oppress the property owner by postponing
payment indefinitely, thus depriving him of the bene-
ficial use of the property and of the money, and that
"the law required them to pay him within a reasonable
time." In the condemnation case of *Cook v. South*

*Park Com'rs,* 61 Ill. 115, it was held to be error to award execution and that the proper method to coerce payment of the condemnation judgment was by mandamus.

It being the law that the petitioners had the right to proceed by mandamus, the question then is, did their petition show facts which entitled them to the writ as awarded. From the opinions to which we have referred it is clear that the writ of mandamus will be awarded only where there is a clear case presented of unreasonable delay or negligence on the part of the City. Where it appears that a city is acting in bad faith, mandamus will lie. *City of Chicago v. People ex rel. De Golyer,* 48 Ill. 416; *Price v. City of Elgin,* 257 Ill. 63. "The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty which one charged with the duty has refused to perform. . . . The office of the writ is to compel action by the unwilling. There must be a refusal to perform the act, and if a personal right is involved a refusal must follow a demand. The writ will not issue to compel the doing of an act which the person sought to be coerced admits on the record he is willing to do without coercion. *People v. Dulaney,* 96 Ill. 503." *People v. Dunne,* 258 Ill. 441.

The first petition in this case was filed September 22, 1928, which was a few months after an issue of bonds to pay these judgments had been submitted and defeated in a referendum to the voters. This petition alleged the right of the City to issue bonds and asked that it be ordered to issue bonds to pay petitioners' judgment. A second amended petition with like allegations and prayer was filed, when there was pending a second referendum on an issue of bonds to pay these judgments. October 16, 1928, the second amended petition was filed. November 6, 1928, the referendum vote was taken and the bond issue was again defeated. January 17, 1929, the writ of mandamus was issued.

So that, while the petition was pending, the defendants were in the exercise of diligence in presenting to the voters a proposed bond issue. In fact, the mandamus proceedings to compel a bond issue and action by the City to the same end synchronized. It is therefore evident that petitioners presented no facts and could not have presented any facts showing negligence or delay on the part of defendants. Under such circumstances the writ should not have been awarded.

The writ seems to have been issued upon the theory that, when the second referendum on the bond issue failed to carry, petitioners were entitled at once to what might be termed a blanket order on the defendants to appropriate money for the payment of petitioners' judgment and also to levy and collect a general tax to pay said judgment, without any showing by petitioners of any unreasonable delay or any refusal by defendants to perform their duty.

For the reason indicated the judgment order awarding the writ is reversed and the cause is remanded with directions to enter an order sustaining the defendants' demurrer to the second amended petition and to dismiss the petition.

*Reversed and remanded with directions.*

O'Connor, P. J., and Matchett, J., concur.